UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JENNIFER F., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:18-cv-00798-TWP-MPB |
| | ) |
| NANCY A. BERRYHILL, Acting Commissioner | ) |
| of the Social Security Administration, | ) |
| | ) |
| Defendant. | ) |

## ENTRY ON JUDICIAL REVIEW

Plaintiff Jennifer F.[1] requests judicial review of the final decision of the Acting Commissioner of the Social Security Administration (the "SSA"), denying her application for Supplemental Security Income ("SSI") under the Social Security Act. For the following reasons, the Court **REMANDS** the decision of the Commissioner.

### I. PROCEDURAL BACKGROUND

On August 29, 2014, Jennifer F. filed an application for SSI, alleging a disability onset date of April 1, 2004. (Filing No. 7-2 at 11.) Her application was initially denied on April 9, 2015, (Filing No. 7-4 at 2), and upon reconsideration on June 29, 2015, (Filing No. 7-4 at 11). Administrative Law Judge David L. Welch (the "ALJ") conducted a hearing on March 17, 2017, at which Jennifer F., represented by counsel, a vocational expert ("VE"), Dr. George Parsons, and two medical experts, Dr. Lee Fisher and Dr. Don Olive, appeared and testified. (Filing No. 7-2 at 34-65.) The ALJ issued a decision on August 4, 2017, concluding that Jennifer F. was not entitled

---

[1] To protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States Courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

to receive SSI.  (Filing No. 7-2 at 8.)  The Appeals Council denied review on January 25, 2018.  (Filing No. 7-2 at 2.)  On March 13, 2018, Jennifer F. timely filed this civil action, asking the Court pursuant to 42 U.S.C. §§ 405(g) and 1383(c) to review the final decision of the Commissioner denying her benefits.  (Filing No. 1.)

## II.  STANDARD OF REVIEW

Under the Social Security Act, a claimant may be entitled to benefits only after she establishes that she is disabled.  Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  To be found disabled, a claimant must demonstrate that her physical or mental limitations prevent her from doing not only her previous work but any other kind of gainful employment which exists in the national economy, considering her age, education, and work experience.  42 U.S.C. § 423(d)(2)(A).

The Commissioner employs a five-step sequential analysis to determine whether a claimant is disabled.  At step one, if the claimant is engaged in substantial gainful activity, she is not disabled despite her medical condition and other factors.  20 C.F.R. § 416.920(a)(4)(i).  At step two, if the claimant does not have a "severe" impairment that also meets the durational requirement, she is not disabled.  20 C.F.R. § 416.920(a)(4)(ii).  A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities."  20 C.F.R. § 416.920(c).  At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, and whether the impairment meets the twelve-month duration requirement; if so, the claimant is deemed disabled.  20 C.F.R. § 416.920(a)(4)(iii).

If the claimant's impairments do not meet or medically equal one of the impairments on the Listing of Impairments, then her residual functional capacity will be assessed and used for the fourth and fifth steps. Residual functional capacity ("RFC") is the "maximum that a claimant can still do despite [her] mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675–76 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(1); Social Security Ruling ("SSR") 96-8p). At step four, if the claimant is able to perform her past relevant work, she is not disabled. 20 C.F.R. § 416.920(a)(4)(iv). At the fifth and final step, it must be determined whether the claimant can perform any other work, given her RFC and considering her age, education, and past work experience. 20 C.F.R. § 416.920(a)(4)(v). The claimant is not disabled if she can perform any other work in the relevant economy.

The combined effect of all the impairments of the claimant shall be considered throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). The burden of proof is on the claimant for the first four steps; it then shifts to the Commissioner for the fifth step. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992).

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted). For the purpose of judicial review, "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted). Because the ALJ "is in the best position to determine the credibility of witnesses," *Craft*, 539 F.3d at 678, this Court must accord the ALJ's credibility determination "considerable deference," overturning it only if it is "patently wrong." *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quotations omitted).

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Barnett*, 381 F.3d at 668. When an ALJ's decision is not supported by substantial evidence, a remand for further proceedings is typically the appropriate remedy. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). An award of benefits "is appropriate only where all factual issues have been resolved and the record can yield but one supportable conclusion." *Id*. (citation omitted).

### III. FACTUAL BACKGROUND

Jennifer F. was 35 years of age at the time she applied for benefits, alleging she could no longer work due to a back injury, hepatitis C, a left arm injury with necrotizing fasciitis, chronic obstructive pulmonary disease, irritable bowel syndrome, bipolar disorder, depression, anxiety, post-traumatic stress disorder, spinal stenosis, and fibromyalgia. (Filing No. 7-6 at 18.) She has completed high school, (Filing No. 7-6 at 19), and previously worked as a cashier, cook, and assembly line worker, (Filing No. 7-6 at 20).[2]

The ALJ followed the five-step sequential evaluation set forth by the SSA in 20 C.F.R. § 416.920(a)(4) and ultimately concluded that Jennifer F. was not disabled. (Filing No. 7-2 at 21.) At step one, the ALJ found that Jennifer F. had not engaged in substantial gainful activity since August 29, 2014, the application date.[3] (Filing No. 7-2 at 13.) At step two, the ALJ found that she had the following severe impairments: "lumbar degenerative disc disease with radiation to the left lower extremity, chronic obstructive pulmonary disease "COPD", fibromyalgia, hepatitis C, irritable bowel syndrome, left upper extremity necrotizing fasciitis, affective disorder, bipolar

---

[2] The relevant evidence of record is amply set forth in the parties' briefs, as well as the ALJ's decision and need not be repeated here. Specific facts relevant to the Court's disposition of this case are discussed below.

[3] Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 416.972(a).

disorder, borderline personality disorder and post-traumatic stress disorder "PTSD" (20 CFR 416.920(c))." (Filing No. 7-2 at 13.) At step three, the ALJ found that she did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (Filing No. 7-2 at 14.) After step three but before step four, the ALJ concluded:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) except that the claimant can lift and carry ten pounds occasionally and less than ten pounds frequently. The claimant can stand two hours and walk two hours of an eight-hour workday, with normal breaks. The claimant can occasionally operate foot controls and push/pull items at the aforementioned weight. The claimant can frequently climb stairs and ramps but never ladders, ropes, or scaffolds. The claimant can frequently balance and stoop. The claimant can occasionally kneel, crouch, and crawl. The claimant can occasionally finger, feel and reach overhead with the left upper extremity. The claimant must never work around pulmonary irritants, unprotected heights or moving machinery. The claimant is able to perform simple, routine tasks. She must be off-task 5-10% of the workday. The claimant can tolerate occasional interaction with supervisors, co-workers and the general public."

(Filing No. 7-2 at 16.) At step four, the ALJ concluded that Jennifer F. did not have any past relevant work to consider. (Filing No. 7-2 at 20.) At step five, the ALJ found, relying on the testimony of the VE and considering Jennifer F.'s age, education, work experience, and RFC, that she was capable of performing other work that existed in significant numbers in the national economy as a surveillance monitor and call-out operator. (Filing No. 7-2 at 21.)

## IV. DISCUSSION

Jennifer F. raises two issues on appeal; that the ALJ ignored (1) contradictory evidence that rendered the VE testimony unreliable and (2) evidence supportive of her subjective symptoms. Because it is dispositive, the Court begins its analysis with the first issue.

The Court finds that the ALJ's step five determination was not supported by substantial evidence. The ALJ called two medical experts to testify at the hearing to assist him with resolution

5

of Jennifer F.'s claim. The ALJ gave "great weight" to the medical experts' opinions based on their medical specialties, specialized knowledge of the disability program, lengthy service as neutral and impartial evaluators of disability cases, familiarity with the entire record including the most up to date medical evidence, thorough analysis, insightful and persuasive explanation of their opinions, and consistency with the record as a whole. (Filing No. 7-2 at 19.) In fact, the ALJ's RFC finding substantially relied on the testimony of the medical experts and the collective functional limitations that they assessed.[4]

However, the combined testimony of one of the medical experts, Dr. Don Olive, and the VE appears to the Court to contradict the ALJ's conclusion that Jennifer F. could perform other work at step five of the determination. Don Olive, Ph.D., a forensic psychologist, (Filing No. 7-11 at 30), testified in relevant part, that he would limit Jennifer F.'s "social interaction to occasional namely public, peers, and supervisors," (Filing No. 7-2 at 46). Jennifer F.'s representative then asked a follow-up, "Doctor, with the constellation of problems that she has, could we expect she may have some periods or episodes where she might need to be away from the workstation that would be unscheduled?" (Filing No. 7-2 at 46.) Dr. Olive responded, "I think that's a fair assessment. That might be a possibility, yes." (Filing No. 7-2 at 46.) The ALJ then asked for some clarification of the limitation, "Can you quantify that for us? I mean what are we talking about?" (Filing No. 7-2 at 47.) Dr. Olive responded, "Oh, 5 to 10 percent of the time perhaps."

---

[4] The Court notes that the ALJ's RFC finding does not include all the limitations that were opined by the medical experts. For example, the ALJ's RFC finding does not include any limitation with handling or the pace of work. *See* (Filing No. 7-2 at 16.) Dr. Lee Fisher testified that Jennifer F. would be limited to occasional use of the left hand for all manipulative functions, including handling. (Filing No. 7-2 at 42-43.) Dr. Don Olive testified that he would limit her to "avoid forced production or fast-paced work". (Filing No. 7-2 at 46.) However, when the ALJ described a relevant hypothetical to the VE that would form the basis of his step five denial, the ALJ did include all the limitations that were assessed by both medical experts. *See* (Filing No. 7-2 at 60-61.) Accordingly, the Court concludes that the ALJ inadvertently excluded certain limitations in his RFC finding in the written decision. Regardless, those discrepancies between the written decision and the relevant hypothetical are not precisely at issue in this appeal.

(*Id*.)  The ALJ again asked for clarification, "Off task 5 to 10 percent?"  (*Id*.)  Dr. Olive affirmed, "As -- as a guesstimate, yes."  (*Id*.)

The ALJ credited the need for a limitation that Jennifer F. would need to be off-task five to ten percent of the workday by including it in his RFC finding.  (Filing No. 7-2 at 16.)  However, when communicating the relevant limitation to the VE during hypothetical questioning, the ALJ neglected to include the basis of the limitation that Dr. Olive opined would render Jennifer F. off-task, which was in response to a question that presumed Jennifer F. would specifically need to be away from the workstation during the unscheduled, off-task periods.  *See* (Filing No. 7-2 at 61) (ALJ added to the hypothetical based on the medical experts' collective testimony, "Strike that.  One more limitation.  This individual would be off task 5 to 10 percent of the time.").

The VE testified that an individual—with the limitations described in the hypothetical posed by the ALJ based on the collective limitations assessed by the medical experts—would be able to perform work as a surveillance system monitor and call-out operator.  (Filing No. 7-2 at 61.)  However, the VE admitted to making one assumption about the limitation with public contact that Dr. Olive had assessed, explaining that the call-out operator did require telephone contact with the public, but not contact in-person.  *See* (Filing No. 7-2 at 61).  The Commissioner concedes, according to the Dictionary of Occupational Titles, that the call-out operator position would require more than occasional contact with the public as specified in the RFC finding.  (Filing No. 18 at 7-8.)  On cross-examination, the VE was asked about an individual's ability to perform the surveillance monitor job if they were off-task five to ten percent of the day, "Is it your opinion, sir, then that the individual could be not watching the monitors for 50 minutes out of – let me be more precise here – 48 minutes out of an eight-hour day?"  (Filing No. 7-2 at 63 (Eight hours multiplied by sixty equals four hundred and eighty minutes in a workday, of which ten percent of the day

would be forty-eight minutes total.).) The VE testified, "No, I think she'd have to be looking at the monitor." (Filing No. 7-2 at 63.) However, the VE made another assumption about the relevant limitation based on how the hypothetical was communicated to him, "But being off task doesn't necessarily mean that they're not looking at the monitor. I don't know what it defines as. If she had to leave the work site, I'd say she couldn't do that job." The VE's assumption as to how off-task behavior was defined in this instance is not consistent with Dr. Olive's actual testimony.

Based on Dr. Olive's testimony, which was given great weight by the ALJ, it appears that Jennifer F. would not be able to do either of the other jobs that she was found capable of performing at step five. The ALJ's decision does not explain how he concluded that Jennifer F. would need to be off-task for five to ten percent of the workday, but also that she would still be able to remain at her workstation to watch the monitor to meet the requirements of the job. "The ALJ's opinion is important not in its own right but because it tells us whether the ALJ has considered all the evidence, as the statute requires him to do." *Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985). "An ALJ may not selectively discuss portions of a physician's report that support a finding of non-disability while ignoring other portions that suggest a disability." *Myles v. Astrue,* 582 F.3d 672, 678 (7th Cir. 2009); *Godbey v. Apfel,* 238 F.3d 803, 808 (7th Cir. 2000) ("Nonetheless, the ALJ's failure to address [a physician's] report in its entirety prevents this court from tracking the ALJ's reasons for discounting it." (*citing Clifford v. Apfel,* 227 F.3d 863, 871 (7th Cir. 2000) (ALJ must consider "*all* relevant evidence" and may not analyze only that information supporting the ALJ's final conclusion (emphasis in original)))).

Moreover, the ALJ ignored a further limitation that Dr. Olive testified was reasonable in response to the ALJ's own questioning at the end of the hearing. The ALJ asked, "Doctor, you were asked if there was a possibility the claimant would be off task 5 to 10 percent and I believe

8

your answer was that's, let me check here, possible." (Filing No. 7-2 at 64.) The VE affirmed the prior testimony and the ALJ continued, "The next question is does that possibility transfer to 12 minutes per hour, hour after hour?" (*Id*.) The VE responded, "I don't know that I can be -- derive that much of a number, but it would not be -- given the constellation of her problems, I don't think that would be unreasonable to expect that might be an average amount of time off per hour." (*Id*.) It's unclear what would be the effect of Jennifer F. being off-task as much as twenty percent of the workday. However, the ALJ's written decision does not explain how he concluded that Jennifer F. did not need to be off-task even more of the workday, after the ALJ unilaterally solicited additional testimony from Dr. Olive supporting the limitation. Social Security Ruling 96-8 does require that the "RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p (S.S.A. July 2, 1996), 1996 WL 374184, at *7. Accordingly, the Court finds that remand is necessary for additional clarification of the relevant RFC limitation about off-task behavior and its effect on Jennifer F.'s ability to perform other work. If the adjudicator does not conclude that the combined testimony of Dr. Olive and the VE supports an award of benefits at step five, which appears to be the case, the written decision must explain how the relevant portions of Dr. Olive's opinion were discredited.

       The Court declines to reach Jennifer F.'s additional argument about her subjective symptoms. Jennifer F.'s statements about her subjective symptoms should be reevaluated in the context of her clarified RFC.

## V. CONCLUSION

For the reasons stated above, the final decision of the Commissioner is **REMANDED** for further proceedings consistent with this Entry as authorized by Sentence Four of 42 U.S.C. § 405(g).

**SO ORDERED.**

Date: 3/13/2019

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Charles D. Hankey
charleshankey@hankeylawoffice.com

Catherine L. Gibbons
SOCIAL SECURITY ADMINISTRATION
catherine.gibbons@ssa.gov

Hannah Danielle Tuber
SOCIAL SECURITY ADMINISTRATION
hannah.tuber@ssa.gov

Kathryn E. Olivier
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
kathryn.olivier@usdoj.gov